UNITED STATES DISTRICT COURT
EASELERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────

DAMIEN SHONTELL HEWLETT,

        Plaintiff,

       v.                                Case No. 24-C-1413

JASON HILL,

        Defendant.
───────────────────────────────────────────────

DECISION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
───────────────────────────────────────────────

Plaintiff Damien Hewlett is an inmate at the Waupun Correctional Institution and representing himself in this 42 U.S.C. §1983 action. He is proceeding on First Amendment and Eighth Amendment claims against Defendant Jason Hill. On August 25, 2025, Defendant filed a motion for summary judgment. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

Hewlett is an inmate in the custody of the Wisconsin Department of Corrections and during the relevant time was housed at the Waupun Correctional Institution, where Jason Hill worked as a correctional officer. On October 26, 2022, Hewlett was prescribed clonidine twice per day to address his complaints of anxiety, suicidal ideation, and nightmares, which he connected to an alleged assault by a correctional officer. Clonidine is a staff-controlled medication, which means that each dose had to be delivered to Hewlett by security staff. Dkt. No. 26 at ¶¶1-5; Dkt. No. 35 at ¶4.

On November 15, 2022, Hill was assigned to work on Hewlett's unit. One of his duties included medication pass, during which he was to offer inmates their prescribed medications.

Hewlett asserts that when he asked Hill to provide him with his medication, Hill responded, "Your ass ain't getting shit and your bitch ass better stop writing security about me or else next time you may just go over the range." Hill does not remember interacting with Hewlett that day, nor does he remember refusing to provide Hewlett with his medication, but he asserts that the only reason he would not provide an inmate with his medication is if the inmate refused it. Hill denies that he made the statement to Hewlett. Dkt. No. 26 at ¶¶17, 24-28, 31; Dkt. No. 35 at ¶6.

Hewlett explains that he believes Hill's statement that "next time [he] may just go over the range" was in reference to an incident that happened a couple of months earlier on September 16, 2022, during which Hill and others tried to decentralize Hewlett after he refused to comply with officers' orders. According to Hill, "[d]ue to the location of Hewlett when the resistance began, Hewlett's head was partially off the range floor and slightly over the tier." Hewlett asserts that he previously filed an inmate complaint about this incident. Hewlett also asserts that, for months, he had been writing to security personnel about Hill's alleged harassment and physically abusive behavior toward him. Dkt. No. 35 at ¶¶23-24.

Hewlett states that, after Hill denied him his medication and threatened him with harm, his anxiety levels intensified to the point that he could not sleep for days on end. He states that he was in fear, his body hurt from the lack of sleep, and his mind was tired and drained. Hewlett asserts that about ten days after the denial, he submitted a health services request that stated, "the clonidine is not working and I still am very anxious, and so anxiety is not any better, and my depression is honestly badder than before. I've been in a dark and gloomy place lately." Dkt. No. 35 at ¶¶16-17.

Although there are some gaps in Hewlett's medication records, Hewlett asserts that he took his medication regularly from October 2022 through December 2022. He states that the only dose

he missed was the one that Hill refused to give him on November 15, 2022. The Health Services Unit manager explains that the gaps in Hewlett's medication records could be due to staff not scanning or charting the medication properly, equipment not working, or the internet being down. Dkt. No. 35 at ¶20.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Hewlett first asserts that Hill violated the Eighth Amendment when, in response to his request for his medication, Hill stated, "Your ass ain't getting shit and your bitch ass better stop writing security about me or else next time you may just go over the range." Hill first argues that

Hewlett's claim fails as a matter of law because "an inadvertent failure to provide adequate medical care, whether due to negligence, medical malpractice, or for any other reason, is categorically *not* deliberate indifference." Dkt. No. 14 at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). But Hewlett's claim is not that Hill *inadvertently* failed to provide him with his medication, but rather that Hill *intentionally* failed to provide him with his medication to punish and/or intimidate him. Hill next argues that Hewlett's claim fails because he provides no evidence that he was medically harmed as a result of missing a single dose of his medication. *Id.* at 9-10 (citing *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008)). But, again, Hill mischaracterizes Hewlett's claim. Hewlett does not assert that he suffered harm from missing a single dose of his medication; Hewlett asserts that he suffered harm from Hill's intimidation and threats, which were bolstered by Hill's action of making sure Hewlett knew that Hill had power to make his life difficult. Hewlett emphasizes that he suffered psychological harm, including increased anxiety and an inability to sleep.

With development of the record, it is clear that Hewlett's claim is best analyzed under *Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015), which holds that verbal harassment can amount to cruel and unusual punishment in violation of the Eighth Amendment. While most verbal harassment by prison guards does not rise to the level of cruel and unusual punishment, some does. *Id.* Here, similar to the plaintiff in *Beal*, Hewlett references a history of harassment and negative interactions with Hill, including a confrontation during which Hewlett asserts that he feared for his life. Moreover, Hewlett asserts that Hill's comment about what might happen "next time" was accompanied by Hill's refusal to provide Hewlett with prescribed medication, a reminder to Hewlett about the power Hill wielded over him. Hewlett asserts that he experienced severe psychological harm as a result of this interaction, including a worsening of his anxiety and nightmares.

Of course, Hill disputes Hewlett's version. Hill asserts that he would not improperly refuse to give a prisoner his medication, and he denies making the comment Hewlett attributes to him. But if a jury were to believe Hewlett's version of their interaction, it could reasonably conclude that Hill's actions violated the Eighth Amendment's prohibition against cruel and unusual punishment. Accordingly, Hill is not entitled to summary judgment on this claim.

Hewlett also is proceeding on a First Amendment retaliation claim against Hill. To survive summary judgment on this claim, Hewlett must set forth evidence that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009).

Hill concedes that Hewlett submitting complaints about him is an activity protected by the First Amendment, so Hewlett satisfies the first prong. Hewlett also has presented evidence to satisfy the second prong. A jury could reasonably conclude that a threat of future harm coupled with the arbitrary denial of prescribed medication is a deprivation that would likely deter a reasonable person from engaging in protected activity in the future. Finally, the Court concludes that Hewlett also has shown that he can satisfy the third prong. If a jury were to believe Hewlett's version, it could reasonably conclude that Hill's admonition to Hewlett to "stop writing security about [him]" means that he was both aware that Hewlett had filed complaints about him and that he was taking the retaliatory action because of those complaints. Accordingly, Hill is not entitled to summary judgment on this claim.

Hill also is not entitled to qualified immunity. The general standard for liability under the Eighth Amendment for significant harassment resulting in psychological harm was well-

5

established at the time of this event. *See Beal*, 803 F.3d at 357. "The purpose of the doctrine of qualified immunity is to shield public officers from liability consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it." *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). If Hill conducted himself in the manner that Hewlett asserts, Hill's threats to Hewlett's life along with the arbitrary denial of his medication could reasonably be found to violate the Eighth Amendment. Hill is therefore not entitled to summary judgment on the basis of qualified immunity. *See Payne v. Pauley*, 337 F.3d 767, 776-81 (7th Cir. 2003) (holding that fact questions precluded summary judgment on issue of qualified immunity).

Although Hewlett's claims will proceed to trial, the Court advises Hewlett that under 42 U.S.C. §1997e(e), he may not recover compensatory damages for emotional or mental injuries unless a physical injury also occurred. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003). Hewlett does not allege a physical injury, so he may not recover compensatory damages, but he may pursue a claim for nominal and punitive damages. *See* Dkt. No. 1 at 6 (requesting a "cash/monetary amount in damages"); *see also Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) (liberally construing a pro se request for "monetary relief" as a request for punitive damages).

Finally, on November 3, 2025, Hewlett filed a motion to appoint counsel. Given the complexity of trying a case before a jury, including offering a coherent opening statement and closing argument, presenting and examining witnesses, and locating and introducing evidence, the Court concludes that Hewlett will benefit from the assistance of counsel in the next stage of litigation. Accordingly, the Court will grant his motion and will make efforts to recruit a volunteer lawyer to represent him.

The demand for volunteer lawyers is high, but the supply is low. Few lawyers have the time, ability, or experience to volunteer for cases such as these. The Court encourages Hewlett to be patient as it makes efforts to recruit a lawyer to represent him. The process may take some time. The Court will promptly notify Hewlett in the event a lawyer volunteers. In the meantime, the Court encourages the parties to explore settlement. If the parties would like to try mediation, the Court can refer the case to a magistrate judge for that purpose. If at any time Hewlett decides he would like to proceed on his own without a lawyer, he should promptly notify the Court, and the Court will schedule a status conference to set a trial date.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 13) is **DENIED**.

**IT IS FURTHER ORDERED** that Hewlett's motion to appoint counsel (Dkt. No. 29) is **GRANTED**.

Dated at Green Bay, Wisconsin this 26th day of January, 2026.

                                                    _William C. Griesbach_
                                                  William C. Griesbach
                                                  United States District Judge